UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVE SANTHUFF | CIVIL ACTION NO._____ |
| VERSUS | JUDGE_____ |
| UNITED PARCEL SERVICE, INC., AND PAUL WITT | MAGISTRATE JUDGE_____ |

COMPLAINT AND JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes Steve Santhuff, an individual of the full age of majority domiciled in this judicial district, who respectfully represents:

ORIGINAL SUBJECT MATTER JURISDICTION

1. This court has subject matter jurisdiction over this matter under 28 USC 1331 as this is a civil action arising under the laws of the United States, particularly the Americans with Disabilities Act, 42 USC 12101, *et seq*., as amended, 42 USC 2000e, Title VII of the Civil Rights Act of 1964, as amended, the Fair Labor Standards Act of 1938, 29 USC 8, *etc*., and diversity jurisdiction as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs and the suit is between citizens of different states.

2. The court also has supplemental jurisdiction over state law claims, including Mr. Santhuff's claims under La. R.S. 23:323, La. R.S. 23:967, and La. Civil Code art. 2315, pursuant to 28 USC 1367, as such claims are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

PARTIES

3. Mr. Santhuff is a citizen of Louisiana.

4. Made defendant herein is United Parcel Service, Inc. (UPS), is a corporation incorporated in Delaware and with its principal business establishment and headquarters located in Georgia.

5. Made additional defendant is Paul Witt, an individual of the full age of majority residing and domiciled in this judicial district, .

6. Under 29 USC 203(a), the Fair Labor Standards Act defines "Person" as including individuals.

7. Under 29 USC 203(d), the Fair Labor Standards Act defines "Employer" as including any person acting directly or indirectly in the interest of an employer in relation to an employee.

8. Paul Witt is individually liable to Mr. Santhuff for the FLSA violations described above, as he has a significant level of financial control within UPS, and plays a significant role in making personnel decisions and setting pay policies.

## FACTS

9. UPS employs more than 500 persons.

10. Mr. Santhuff began his employment with UPS on February 4, 1998, most recently working as a Supervisor earning approximately $22.43 per hour.

11. In 2016 Mr. Santhuff was on short term disability for eye surgeries due to pigmentary glaucoma which was adversely affected by exercise and movement or jarring. He was out of work longer than expected due to his severe adverse reaction to a medication known as Diamox, used to treat his glaucoma. He had eight surgeries and related clinical procedures or injections.

12. Shortly before his return to work, Mr. Santhuff requested a reasonable accommodation. At

first, it was agreed he would work no more than three hours per day of physical labor, which was well within his typical or essential job functions for his current job.

13. On returning to work on July 11, 2016, however, UPS manager Jeff Hill at the direction of manager Paul Witt required Mr. Santhuff to perform a completely different job, which required him to ride a UPS delivery truck five consecutive days per week, nine to twelve hours per day, as a passenger in a "jump seat" with an insufficiently-cushioned plywood seat and a 90-degree aluminum back, which job resulted in Mr. Santhuff being constantly jarred and jostled, in violation of the limitations imposed by his disability.

14. The new job assignment was not Mr. Santhuff's regular job nor an agreed upon reasonable accommodation, nor was it a job within UPS that was ever regularly assigned to anyone. UPS intentionally inflicted upon Mr. Santhuff more harm than good in assigning him to the new job as compared to his previous job.

15. UPS managers Jeff Hill and Paul Witt assigned Mr. Santhuff the new job as a result of unlawful discrimination against him based on his disability, in failing to afford a reasonable accommodation, and it acted in retaliation against Mr. Santhuff for missing work and taking short term disability as a result of his disability.

16. Mr. Santhuff complained to UPS Human Resources supervisor Wilfred Edwards, who told Mr. Santhuff that UPS was not in violation of any part of the ADA process, and that the assignment that he ride five days per week, week after week, in the jump seat, with no breaks for recovery, was well within the authority of his supervisor.

17. In the spring of 2017, UPS manager Jeff Hill required Mr. Santhuff to ride three, four, and five days per week, every week, even though his typical job throughout his career had never

required such an extensive amount of such activity.

18. In June 2017 it was necessary for Mr. Santhuff to undergo additional eye surgeries, but he missed only three weeks of work.

19. Immediately upon his return from eye surgery, Mr. Santhuff was ordered to ride four consecutive days on the truck.

20. During the periods when Mr. Santhuff was required to ride UPS trucks, UPS manager Jeff Hill removed from Mr. Santhuff some of his previous authority and ordered him not to attend weekly center planning meetings, even though he had routinely done so in the past as a supervisor, because his new job was on the truck every day.

21. Mr. Santhuff's manager Jeff Hill refused to investigate unfounded complaints made against Mr. Santhuff as well as Mr. Santhuff's complaints against others, in discrimination against Mr. Santhuff on account of his disability and in retaliation against Mr. Santhuff for taking time off for treatment for his disability.

21. Mr. Santhuff's manager Jeff Hill instigated and encouraged employees to make complaints against Mr. Santhuff, in discrimination against Mr. Santhuff on account of his disability and in retaliation against Mr. Santhuff for taking time off for treatment for his disability.

22. Without first conducting full and impartial investigations, Mr. Santhuff's managers Paul Witt and Wilfred Edwards dishonestly told Mr. Santhuff that they were required or forced to move him from Gonzales in the past, and to move him from Baker now, and he would be transferred to Port Allen.

23. Mr. Santhuff's manager Jeff Hill violated UPS policy by not participating in the discipline process. He delegated the disciplinary process to the supervisors and instructed Mr. Santhuff

to remove his name from discipline letters. This activity by Hill caused it to appear that Mr. Santhuff was issuing much more discipline than was necessary, when in fact this was not the case.

24. On June 30, 2017, Mr. Santhuff's manager Witt and HR Supervisor Edwards presented Mr. Santhuff with a document they described as a "review" and told Mr. Santhuff he had to sign it. Upon reviewing the document, Mr. Santhuff found that it was not merely a review but was a contract or "formal agreement" that outlined alleged violations of policies by Mr. Santhuff. If Mr. Santhuff had signed the document, he would have "agreed" to forfeit a portion of his annual salary for 2018.

25. Mr. Santhuff refused to sign the contract based on its false statements and its misrepresentation as a mere "review." Mr. Santhuff did, however, photograph the document, for which manager Paul Witt retaliated against Mr. Santhuff by removing his raise.

26. Notwithstanding the above incident, Mr. Santhuff's manager Witt issued unwarranted and unfair disciplinary against him which affected Mr. Santhuff's compensation for the year 2017 and will affect his compensation for 2018.

27. UPS security management questioned Mr. Santhuff about another manager, Darin Williams, against whom they were building a case to terminate his employment. Mr. Santhuff cooperated with the interviewers and gave statements, but they were not as helpful as UPS would have liked, and UPS' actions against Mr. Santhuff were in retaliation against Mr. Santhuff for engaging in protected activity, namely not making damaging statements against Darin Williams, whom UPS fired based on unlawful sex discrimination, which is the subject of a different lawsuit.

28. Mr. Santhuff was not exempt from the overtime requirements of the Fair Labor Standards Act. He regularly used instrumentalities of commerce, such as the telephone, fax, mail, and electronic mail for interstate communication and/or maintained records of interstate activities.

29. UPS paid Mr. Santhuff a salary but Mr. Santhuff is not exempt from overtime pay under any of the recognized statutory exemptions.

30. Mr. Santhuff has regularly worked overtime hours, but UPS has failed to pay him time and one-half his regular rate of pay for all hours worked in excess of 40 per week during one or more weeks.

### COUNT ONE: AMERICANS WITH DISABILITIES ACT DISCRIMINATION

31. Mr. Santhuff reavers allegations 1 through 23 above. UPS' failure to grant a reasonable accommodation constitutes unlawful discrimination against Mr. Santhuff in violation of the ADA.

32. UPS' actions in requiring Mr. Santhuff to work more difficult jobs after his return from treatment for his disability constitutes unlawful retaliation against Mr. Santhuff in violation of the ADA.

33. As a result of UPS' unlawful actions in violating the ADA, Mr. Santhuff has suffered injuries including lost income and benefits, emotional distress, mental anguish, anxiety, embarrassment, humiliation, injury to his reputation, and other losses and damages to be proved at trial.

### COUNT TWO: TITLE VII RETALIATION

34. Mr. Santhuff reavers allegations 1 through 30 above. UPS' actions in issuing unwarranted

and unfair discipline against Mr. Santhuff which will adversely affect his compensation was motivated by unlawful retaliation against Mr. Santhuff in violation of Title VII for his failure to provide statements they wanted to use to terminate Darin Williams, against whom UPS unlawfully discriminated against based on his sex.

35. As a result of UPS' actions described herein, Mr. Santhuff has suffered lost wages and benefits, as well as emotional distress, mental anguish, anxiety, embarrassment, humiliation, injury to his reputation, loss of earning capacity, and other losses to be proved at trial.

## COUNT THREE: FAIR LABOR STANDARDS ACT VIOLATION

36. Mr. Santhuff reavers allegations 1 through 30 above. UPS paid Mr. Santhuff a salary but Mr. Santhuff is not exempt from overtime pay under any of the recognized statutory exemptions.

30. Mr. Santhuff has regularly worked overtime hours, but UPS has failed to pay him time and one-half his regular rate of pay for all hours worked in excess of 40 per week during one or more weeks.

31. As a result of UPS's intentional, willful, and unlawful acts in refusing to pay Mr. Santhuff's overtime pay, Mr. Santhuff has suffered loss of income, damages, and incurred attorney fees and costs, for which defendant is liable to Mr. Santhuff for a period going back three years.

32. Defendant willfully violated the FLSA, and Mr. Santhuff is therefore entitled to liquidated damages. UPS is also responsible to pay Mr. Santhuff's attorney's fees and costs.

## COUNT FOUR: LOUISIANA TORT LIABILITY

33. Louisiana Civil Code article 2315 gives rise to liability of employers for breach of statutory duties (such as ADA, Title VII, and FLSA) to their employers. Because UPS violated these statutory duties owed to Mr. Santhuff, it is liable to him in tort, and Mr. Santhuff is entitled

to recover damages from UPS, including lost income and benefits, compensatory damages, and all other appropriate relief.

34.     Complaint requests a jury trial.

WHEREFORE, plaintiff, Steve Santhuff, prays that after due proceedings are had there be judgment rendered in his favor, awarding him all damages to which he is entitled, together with interest, costs, attorney fees, and all other legal, equitable, and general relief.

Respectfully Submitted:
**SCOTT D. WILSON**
**A PROFESSIONAL LAW CORPORATION**
533 Europe Street
Baton Rouge, Louisiana 70802
Phone 225-388-9788; Fax 225-344-1200
sdwilsonlaw@aol.com

BY:   s/Scott D. Wilson
       **SCOTT D. WILSON (#19835)**